UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* OCEAN STATE TRANSIT, LLC, d/b/a Student Transportation of America, Inc., *a Rhode Island limited liability company* | ) ) ) ) ) ) ) ) |  |
| Plaintiff, | ) ) |  |
| v. | ) ) ) | C.A. No. 1:21-CV-00391-MSM-PAS |
| ANGELICA INFANTE-GREEN, *in her personal capacity,* JOHN, AND JANE DOES 1-5, *in their individual capacities*, | ) ) ) ) ) |  |
| Defendants. | ) ) ) |  |

MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

This is a qui tam suit brought on behalf of the United States of America by relator Ocean State Transit, LLC ("Ocean State") against Rhode Island Commissioner of Elementary and Secondary Education Angélica Infante-Green and several other unnamed state officials in their individual capacities. Ocean State alleges that Commissioner Infante-Green violated the Federal False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.*, by falsely certifying that the Rhode Island Department of Elementary and Secondary Education ("RIDE") complied with a requirement in the federal COVID-19 relief statutes – the Coronavirus Aid, Relief,

1

and Economic Security Act (the "CARES Act"), the Consolidated Appropriations Act ("CAA"), and the American Rescue Plan Act ("ARPA") – requiring that RIDE "shall to the greatest extent practicable, continue to pay its employees and contractors during the period of any disruptions or closures related to the coronavirus." (ECF No. 1 ¶ 12.) The United States has declined to intervene, so Ocean State is pursuing this action alone as a qui tam relator. The Court now considers Commissioner Infante-Green's Motion to Dismiss (ECF No. 18) this complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

For the reasons below, Commissioner Infante-Green's Motion to Dismiss is GRANTED.

## I. BACKGROUND

In response to the COVID-19 pandemic, Congress passed the CARES Act, CAA, and ARPA to provide relief to American families, businesses, and state and local governments. Together, these packages disbursed at least $581,541,859 in funds to RIDE. (ECF No. 1 ¶ 16.) Congress included in these relief statutes provisions creating conditions on an educational agency's receipt of funding, including a requirement that the agency "shall to the greatest extent practicable, continue to pay its employees and contractors during the period of any disruptions or closures related to the coronavirus." *See* CARES Act § 18006.

To receive funding through these programs, RIDE and State officials signed certifications on three separate occasions agreeing to comply with the requirements set forth in the COVID-19 relief statutes: Commissioner Infante-Green on May 15,

2020; the Governor's Deputy Chief of Staff Kevin Gallagher on May 26, 2020; and RIDE's Deputy Commissioner Ana Riley on February 9, 2021. (ECF No. 1 at 10-12.) These certifications acknowledged that failure to comply with all relevant provisions and requirements of the CARES Act or any other applicable law or regulation "may result in liability under the False Claims Act." *Id.* The certifications also stated that an agency receiving funding would "to the greatest extent practicable, continue to compensate its employees and contractors during the period of any disruptions or closures related to COVID-19 in compliance with Section 18006 of Division B of the CARES Act." *Id.*

RIDE had been contracting with Ocean State to provide student transportation services since 2014, with their most recent contract with the company extending through June 30, 2020. (ECF No. 18 at 7.) RIDE stopped paying Ocean State on March 16, 2020, after Governor Gina Raimondo ordered schools to close as part of the state's COVID-19 pandemic lockdown. *Id.* A "long series of correspondence and discussions" followed between the parties about what RIDE owed to Ocean State for the period of March 16 through June 12, 2020. *Id.* at 9. Although at one point an agreement was apparently reached to pay Ocean State approximately 34 percent of its fixed costs for the period, this agreement fell through when RIDE added conditions to its offer of payment. *Id.* To date, RIDE has paid no amount to Ocean State for the period following Rhode Island's cessation of in-person instruction during the 2019-2020 school year. *Id.* at 10.

## II.   STANDARD OF REVIEW

On a motion to dismiss under Rule 12(b)(6), courts must evaluate whether the complaint adequately pleads facts that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In performing this evaluation, courts "assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007).  But they do not "draw unreasonable inferences or credit bald assertions [or] empty conclusions." *Theriault v. Genesis HealthCare LLC*, 890 F.3d 342, 348 (1st Cir. 2018).

## III.   DISCUSSION

The FCA imposes civil liability on any person who "knowingly presents," "causes to be presented," or conspires to present "a false or fraudulent claim for payment or approval" to the United States government.  *Borzilleri v. Bayer Healthcare Pharm., Inc.*, 24 F.4th 32, 36 (1st Cir. 2022).  The FCA includes a scienter requirement, meaning that a person must have "actual knowledge of the information [presented to the government]" and either "act[ ] in deliberate ignorance of the truth or falsity of the information" or "in reckless disregard of the truth or falsity of the information," § 3729(b)(1)(A), as well as a materiality requirement, meaning the information must have "a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property," § 3729(b)(4).  FCA actions are also subject to the heightened pleading standard for fraud allegations under Rule 9(b), which means that "a party must state with particularity the circumstances

constituting fraud or mistake." Fed. R. Civ. P. 9(b). Such particularly requires "that a complaint must specify 'the time, place, and content of an alleged false representation.'" *United States ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 731 (1st Cir. 2007) (quoting *Doyle v. Hasbro, Inc.,* 103 F.3d 186, 194 (1st Cir.1996)).

Commissioner Infante-Green presents five arguments in support of her motion: (1) the action should be dismissed under the doctrine of sovereign immunity, because the Complaint is in fact against the State of Rhode Island; (2) defendants are entitled to qualified immunity, because the CARES Act is a "standardless" statute incapable of clearly establishing a statutory right that the defendants should reasonably have known about; (3) the dispute is over such a small proportion of the overall pandemic relief funding RIDE received that there is no materiality; (4) this is essentially a contractual dispute that does not meet the FCA's falsity requirement; and (5) the defendants did not have the requisite scienter to violate the FCA.

### A. Sovereign Immunity

The Commissioner first argues that although Ocean State's Complaint is stylized as a suit against the defendants in their individual capacities, its allegations are in reality against the State of Rhode Island, which is entitled to sovereign immunity. (ECF No. 18 at 12.) The First Circuit has held that "the distinction between official capacity and individual capacity suits is well established. That distinction depends on 'the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury.'" *Guillemard-Ginorio v. Contreras-Gomez*, 585 F.3d 508, 530 (1st Cir. 2009) (quoting *Hafer v. Melo*, 502 U.S. 21, 26

(1991)).  Personal capacity suits "seek to impose individual liability upon a government officer for actions taken under color of state law. … [A] suit against a state officer in his or her individual capacity for money damages is not a suit against the state for purposes of Eleventh Amendment immunity." *Id.* at 531 (quoting *New Orleans Towing Ass'n v. Foster*, 248 F.3d 1143 (5th Cir. 2001)).

In contrast to this rule, the Commissioner contends that it is the capacity in which the officer inflicts the alleged injury that matters.  She cites a line of cases from the Eighth Circuit for the argument that, when an FCA complaint does not allege with specificity how a state official "acted outside of [their] official duties," any FCA claim against that official is really a claim against the state that must be dismissed under the Eleventh Amendment.  *U.S. ex. rel. Gaudineer & Comito, L.L.P. v. Iowa*, 269 F.3d 932, 936-37 (8th Cir. 2001).  In this case, where "there is no allegation that Defendants took any action outside of their official duties, that any Defendant personally benefited from the allegedly false claims, or that any funds from the federal government were used for private or improper reasons," the Complaint should be interpreted as actually being against the state.  (ECF No. 18 at 14.)

Ocean State counters that the holding in *Gaudineer* has been rejected by several other courts.  For example, the Ninth Circuit held that an FCA complaint "need not allege that the individual defendants personally profited from such false submissions" because "nothing in [the FCA] requires the person knowingly making a false submission to obtain a personal benefit from the wrongful act," and any holding otherwise "would be tantamount to a grant of absolute immunity under the FCA to

6

state officials for any actions taken in the course of their governmental responsibilities." *Stoner v. Santa Clara Cnty. Off. of Educ.*, 502 F.3d 1116, 1124 (9th Cir. 2007).

The First Circuit has not specifically addressed the issue of officials being sued in their individual versus official capacities in an FCA case. However, it has answered this question in the context of a § 1983 claim. In *Asociación de Subscripción Conjunta del Seguro de Responsabilidad Obligatorio v. Flores Galarza*, 484 F.3d 1, 26 (1st Cir. 2007), a Puerto Rican state official was sued in both his official and personal capacities under § 1983 for withholding insurance premiums in violation of the takings clause. The First Circuit held that the official was not protected by sovereign immunity, concluding that "in a suit against an officer for money damages when the relief would come from the officer's own pocket, there is no Eleventh Amendment bar even though the conduct was part of the officer's official duties." *Id.* (internal citations omitted). The critical question, then, is whether the relief in a case would come from an official's own pockets or the state treasury.[1] Here, the claim is for money damages from the defendants' own pockets, and so should be considered a suit against the defendants in their individual capacities.

Commissioner Infante-Green seeks to distinguish *Flores* on the grounds that "[i]n a § 1983 case, the wrongdoer is 'liable to the party injured,' which can include a

---

[1] The court also noted that "[s]tate indemnification policies are irrelevant for Eleventh Amendment analysis and do not prevent federal court relief against individual officers." *Flores*, 484 F.3d at 26 (quoting Erwin Chemerinsky, *Federal Jurisdiction* § 7.5.2, at 423 (4th ed. 2003)).

private party," whereas in an FCA case "the federal government is the real party in interest." (ECF No. 23 at 10.) But the Court does not agree that this difference justifies the application of sovereign immunity to defendants being sued in their individual capacities. "As damages in this case are being sought from and awarded against [defendants] in their personal capacities only, the Eleventh Amendment provides them no defense." *Guillemard-Ginorio*, 585 F.3d at 532.

## B. Qualified Immunity

The Commissioner next argues that the nature of Ocean State's claim means defendants are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal citations omitted). As part of this analysis, courts must determine "whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Alston v. Town of Brookline*, 997 F.3d 23, 50 (1st Cir. 2021). In this case, Commissioner Infante-Green argues that there was and is no clearly established law that would make a reasonable public official understand that certifying that RIDE had paid contractors "to the greatest extent practicable" was an FCA violation. Although there is little case law interpreting the meaning of "to the greatest extent practicable" under the CARES Act, she points to one § 1983 case, *Professional Staff Congress/CUNY v. Rodriguez*, 478 F. Supp. 3d 509, 517 (S.D.N.Y. 2020), in which the court found the CARES ACT to be a "standardless statute" whose "limitation to what

8

is to the greatest extent practicable is effectively lacking in any real standards."

Ocean State asserts that this argument – that qualified immunity can insulate a state official from suit under the FCA – is not supported by case law. While the First Circuit has not decided this issue, two circuits have, and both cases run contrary to the Defendant's position.[2] *See United States ex rel. Citynet, LLC v. Gianato*, 962 F.3d 154, 160 (4th Cir. 2020) ("[Q]ualified immunity may not be invoked as a defense to liability under the FCA."); *see also Samuel v. Holmes*, 138 F.3d 173, 178 (5th Cir. 1998) ("[Q]ualified immunity seems particularly ill-suited in this context, given the goals of the FCA.").[3] In arriving at this conclusion, both courts cited the FCA's unique purpose of protecting the federal government from fraud. The *Gianato* court also based its decision on the FCA's requirement that only defendants who have acted "knowingly" can be held liable under the statute: "[i]n order to have violated the FCA, a government official would have necessarily had to act in a manner inconsistent with the type of 'reasonable but mistaken judgments' qualified immunity is designed to shield." *Gianato*, 962 F.3d at 160.

Ocean State also argues that, even if qualified immunity can apply to an FCA

---

[2] Commissioner Infante-Green points to dicta in the Ninth Circuit's *Stoner* decision, in which the court wrote, "Of course, state employees sued under the FCA may be entitled to qualified immunity." *Stoner*, 502 F.3d at 1125 n.3. This was a somewhat parenthetical aside to *Stoner's* holding that sovereign immunity does not shield state officials from FCA actions, with the court commenting that, by contrast, qualified immunity might shield them. But the court did not undertake an analysis about whether qualified immunity actually does apply to FCA claims.

[3] The Fifth Circuit's decision in *Samuel* dealt with the retaliation provision of the FCA. But the court's reasoning applies equally well to the FCA's qui tam provision.

claim, the well-plead facts would overcome it, as Ocean State alleges that Infante-Green did, in fact, know that RIDE was not complying with the CARES Act when she signed the certification, which included language that should have given defendants clear notice of the liability they faced.[4]

Whether or not this allegation is true is a question of fact, and it is relevant that the single case in which a district court has applied qualified immunity to an FCA claim, *United States ex rel. Burlbaw v. Orenduff*, 400 F. Supp. 2d 1276, 1289 (D.N.M. 2005), was decided on a motion for summary judgment, not a motion to dismiss. In *Orenduff*, the district court found that, based on the summary judgment record that had been developed, the plaintiffs had "failed to raise an issue of fact concerning any Defendant's intent" to knowingly or recklessly provide a false certification to the government. *Id.* Here, no such record has yet been developed. In asking for a qualified immunity analysis at this early stage, the Commissioner is inviting the Court to take a completely novel action. Without deciding whether it is ever appropriate to apply qualified immunity to an FCA claim, the Court finds that doing so is not proper in this case on a motion to dismiss.

C. Materiality

---

[4] "I acknowledge and agree that the failure to comply with all Assurance and Certification of this Agreement, all relevant provisions of the CARES Act, or any other applicable law or regulation may result in liability under the False Claims Act 31 U.S.C. § 3729, et seq." (ECF No. 20 at 15-16.)

The Commissioner next argues that the monetary amount that was allegedly not paid to Ocean State is an infinitesimally small proportion of the $594,050,429 received by RIDE under the CARES Act and so does not meet the FCA's demanding materiality standard. (ECF No. 18 at 28-29.) However, many courts have found that materiality calls for an examination of the federal government's payment decision and whether it would have been affected by the defendant's noncompliance, not by the amount of the payment. *See, e.g.*, *United States ex rel. Simpson v. Bayer Corp.*, 376 F. Supp. 3d 392, 410 (D.N.J. 2019) ("[T]he materiality inquiry does not ask whether *the cost* of a noncompliant item would have affected the Government's payment decision; it asks whether *the noncompliance itself* would have affected that decision."); *Commonwealth ex rel. Martino-Fleming v. S. Bay Mental Health Ctr.*, 334 F. Supp. 3d 394, 408–09 (D. Mass. 2018) (holding that Massachusetts sufficiently alleged a state law FCA claim against health care provider, even though false claims did not increase the reimbursement amount); *U.S. ex rel. Duffy v. Lawrence Mem. Hosp.*, No. 14-2256, 2018 WL 4748345, at *8 n.8 (D. Kan. Oct. 2, 2018) ("whether the U.S. Treasury is ultimately impacted is not relevant to the question of whether an alleged misrepresentation affected or would likely affect a reimbursement decision").

The certifications signed by the defendants provided that "failure to comply with … the CARES Act … may result in liability under the False Claims Act." (ECF No. 20 at 23.) While the Supreme Court specified that "the Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive," *Universal Health Services, Inc. v. U.S., ex rel. Escobar*,

11

579 U.S. 176, 194 (2016), the First Circuit has held that "[m]ateriality is more likely to be found where the information at issue goes to the very essence of the bargain." *United States ex rel. Escobar v. Universal Health Servs., Inc.*, 842 F.3d 103, 110 (1st Cir. 2016) (internal citation omitted). Given that one of the main goals of the CARES Act – in other words, part of its essence – was to insulate businesses from the disruptions brought on by the COVID-19 pandemic, it is at least plausible that the federal government would not have released CARES Act funding to RIDE had the Commissioner refused to sign the certification or indicated that she would not comply with the requirements of § 18006.

### D. Falsity and Scienter

Along with her immunity claims, Commissioner Infante-Green also argues that Ocean State fails to show the falsity and scienter required to state a claim under the FCA.

Several circuit courts have held that an FCA claim must allege a statement or conduct that "represent[s] an objective falsehood." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008). This requirement is not met by a "run-of-the-mill breach of contract action" in which an FCA relator bases a fraud claim "on nothing more than his own interpretation of an imprecise contractual provision." *Id.* at 378. But a circuit split exists over this "objective falsehood" requirement. *See United States v. AseraCare, Inc.*, 938 F.3d 1278, 1298 (11th Cir. 2019) ("a number of opinions from our sister circuits lends support to our conclusion that the Government must show an objective falsity."); *cf. States v. Care*

12

*Alternatives*, 952 F.3d 89, 91 (3d Cir. 2020) (rejecting "objective-falsehood requirement for FCA falsity"); *United States ex rel. Polukoff v. St. Mark's Hosp.*, 895 F.3d 730, 742-743 (10th Cir. 2018) ("the fact that an allegedly false statement constitutes the speaker's opinion does not disqualify it from forming the basis of FCA liability"); *United States ex rel. Winter v. Gardens Regional Hospital & Medical Ctr., Inc.*, 953 F.3d 1108, 1122 (9th Cir. 2020) (refusing "to graft any type of 'objective falsity' requirement onto the FCA.").

The First Circuit has not yet decided the issue of the whether an objective falsehood is required to sustain a claim under the FCA. The court did note in *United States ex rel. Jones v. Brigham & Women's Hosp.*, 678 F.3d 72, 87 (1st Cir. 2012) that it "take[s] a broad view of what may constitute a false or fraudulent statement to avoid foreclos[ing] FCA liability in situations that Congress intended to fall within the Act's scope." But the court also made clear that "[e]xpressions of opinion, scientific judgments, or statements as to conclusions about which reasonable minds may differ cannot be false." *Id.* (internal citation omitted).

The Commissioner argues that her certification that RIDE "shall to the greatest extent practicable, continue to pay its employees and contractors" cannot constitute an objective falsehood because she had an objectively reasonable interpretation of the terms of RIDE's contract with Ocean State that did not require payment to Ocean State after the cessation of in-school instruction in March 2020. (ECF No. 18 at 24-26.) While the contract "guaranteed compensation for a minimum Daily Bus Service Time of four (4.0) hours for each vehicle assigned to a regular

13

routing package under this Agreement," Commissioner Infante-Green argues that its terms could also support an interpretation of "Daily Bus Service Time" as something triggered only where transportation service has been provided, meaning she "could have reasonably concluded that no performance occurred for which Ocean State was entitled to payment; under the contract or § 18006." *Id.*

The existence of a potentially reasonable alternative interpretation of this contract is particularly challenging to Ocean State's FCA claim given the nature of the statute upon which it is based. There is only one case in which a district court has ruled on what the "to the greatest extent practicable" language in the CARES Act requires. In *Professional Staff Congress/CUNY v. Rodriguez*, 478 F. Supp. 3d 509, 514 (S.D.N.Y. 2020), adjunct professors sued a university and its chancellor arguing that they had violated § 18006 of the CARES Act by declining to renew their faculty appointments and therefore not continuing to pay them "to the greatest extent practicable." But the Court held that § 18006 is a "standardless statute" and that "its limitation to what is to the greatest extent practicable is effectively lacking in any real standards." *Id.* at 516-17. This conclusion was based in part on how "the CARES Act provides no statutory guidance as to how a funding recipient should determine the 'practicability' of retaining its employees," as well as the fact that "the phrase [is not] the subject of any meaningful legislative history." *Id.* at 516.

The *Rodriguez* opinion is not binding on this court, but its reasoning is persuasive. Even if the Court does not adopt its full determination that § 18006 is completely standardless, the statute confers substantial discretion on funding

14

recipients to determine the meaning of practicability. This discretion, along with the Commissioner's alternative interpretation of its contract terms with Ocean State – under which Ocean State could reasonably be considered to not be entitled to payment – together paint a picture that the Commissioner's certification that it would pay its contractors "to the greatest extent practicable" was a "statement[] as to [a] conclusion[] about which reasonable minds may differ." *Brigham & Women's Hosp.*, 678 F.3d at 87. Such a statement, the First Circuit has made clear, "cannot be false." *Id.*

This conclusion impacts the Court's scienter analysis, as well. The FCA only imposes liability on persons who "knowingly" present false claims to the United States government. 31 U.S.C. § 3729(b). A person acts "knowingly" if they "(1) had actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth of falsity of the information." *Id.* Significantly, the First Circuit has directed courts to circumscribe FCA liability with "strict enforcement of the Act's … scienter requirement[]." *Brigham & Women's Hosp.*, 678 F.3d at 87 (quoting *United States v. Sci. Applications Int'l Corp.,* 626 F.3d 1257, 1280 (D.C.Cir.2010)).

The Commissioner argues that it is impossible to knowingly perpetrate fraud on the federal government based on a statutory command that confers as much discretion as § 18006, and that, in any event, Ocean State has not plead sufficient facts to plausibly show the Commissioner acted with scienter. Ocean State alleges that the Commissioner "knew that RIDE owed Ocean State … funds, that she knew

15

that RIDE had not paid what was owed, that she knew RIDE did not intend to pay and that she nonetheless falsely certified to the United States that she was complying and would comply with the CARES Act." (ECF No. 20 at 20.) To support these allegations, Ocean State's Complaint states that "at the time [the Commissioner] certified RIDE's compliance with the statutory conditions to receive ECF funds … RIDE was not complying [with] this condition," and that "[the Commissioner knew that RIDE was not complying with and would not comply with the CARES Act and CAA's conditions on ESF funds because RIDE had unilaterally stopped paying Ocean State owed minimum charges during the 2020 school closures." (ECF No. 1 ¶¶ 56, 81.) But the lack of standards in § 18006 and the existence of a reasonable alternative interpretation of Ocean State's contract mean that more facts are necessary to plausibly show that the Commissioner acted with scienter.

For these reasons, the Court finds that Ocean State has not plead sufficient facts under Fed. R. Civ. P. 8 to raise a plausible claim that the Commissioner knowingly presented a false claim to the United States government.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Commissioner Infante-Green's Motion to Dismiss (ECF No. 18).

IT IS SO ORDERED.

_____
Mary S. McElroy
United States District Judge
April 28, 2023

16