IN THE UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* OCEAN STATE TRANSIT, LLC d/b/a Student Transportation of America, Inc., *a Rhode Island limited liability company*,<br><br>    Plaintiff,<br><br>vs.<br><br>ANGELICA INFANTE-GREEN, *in her personal capacity*, JOHN AND JANE DOES 1-5, *in their individual capacities*,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   No. 1:21-cv-00391-MSM-PAS<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MOTION TO ALTER OR AMEND UNDER RULE 59(e)**

Pursuant to Rule 59(e), the Court should alter or amend its April 28, 2023, judgment because, in holding that Ocean State did not sufficiently plead the falsity or scienter elements of an FCA claim, the Court appears to have overlooked allegations in Ocean State's Complaint that established both falsity and Infante-Green's state of mind when she signed the CARES Act certification.

In finding a failure to plead falsity, the Court focused on an alleged alternative interpretation of the parties' contract offered by Infante-Green. But this action is not one for breach of contract. The falsity alleged in the Complaint is not RIDE's failure to pay Ocean State under the contract but Infante-Green's certification that she would comply with all relevant provisions of the CARES Act, knowing she and RIDE were not and would not. (ECF No. 1, ¶¶ 50-63, 77-79).

The Complaint pleads that the CARES Act's certification explicitly told Infante-Green that failing to meet all relevant provisions of the CARES Act "may result in liability under the False Claims Act." (ECF No. 1, ¶ 51). The Complaint quotes and attaches Infante-Green's

memorandum to all Rhode Island educational districts, revealing her interpretation of RIDE's requirements under § 18006 of the CARES Act. (ECF No. 1, ¶¶ 32-35; ECF No. 1-4). Infante-Green's memorandum referenced section 18006's "to the greatest extent practicable" requirement eight times, telling local districts, among other things, that they should determine whether financial support to help vendors meet their fixed costs is practicable, emphasizing that those costs "that will enable employees to stay engaged and employed to the greatest extent practicable" during the shutdowns. (ECF No. 1-4, p. 2). Infante-Green told districts to keep in mind the spirit of the CARES Act (in particular the "greatest extent practicable" language) "and approach this question with a unique collaborative effort requiring good faith negotiation by both parties." (ECF No. 1, ¶ 35; ECF No. 1-4, p. 4). Infante-Green concluded that because the CARES Act provides that local educational agencies should pay contractors to the greatest extent practicable, local educational agencies "may be found ineligible for CARES Act support if they fail to do so." (ECF No. 1-4, p. 4).

Unlike other FCA actions in which the complaint has no direct statements from the defendants, Ocean State's Complaint specifically pleads what Infante-Green believed she and RIDE needed to do under section 18006 to receive and maintain CARES Act funds in her own words. The Complaint alleged that she failed to abide by her own interpretation of section 18006 by failing to negotiate with Ocean State (a current RIDE contractor when the pandemic shut down schools) in good faith despite certifying to the United States that she would do so.

Even if Ocean State's contract with RIDE did not require a guaranteed payment (which it did), Infante-Green still had a duty under section 18006 to negotiate with Ocean State in good faith and ensure that it was paid to the greatest extent practicable. Indeed, an essential purpose of section 18006 (in Infante-Green's own words) was to ensure that "transportation services for

2

students to be available immediately when school resumes, *with an emphasis on those costs that will enable employees to stay engaged and employed to the greatest extent possible*." ECF No. 1-4, p. 4 (emphasis in original). Thus, the Court's focus on two reasonable interpretations of the contract and the purported "standardless" nature of section 18006 is misplaced. The Court should alter or amend its judgment.

I.     **This is not a breach of contract action**

The Court notes that the circuits are split regarding whether "objective falsehood" is required under the FCA. The Court then holds that, under *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.,* 525 F.3d 370, 378 (4th Cir. 2008), falsity is not met through "run-of-the-mill" breach of contract actions based only on the relator's own interpretation of imprecise contractual provisions. (ECF No. 26, p. 12). But unlike *Kellogg*, in which the alleged false certification was part of the contract itself, the false certification here is entirely separate from any contract. Unlike *Kellogg*, the CARES Act certification Infante-Green signed—and that Ocean State alleges was false—expressly told her that failing to abide by the CARES Act would violate the False Claims Act. Ocean State's FCA claim is not premised solely on its interpretation of the parties' contract but Infante-Green's own interpretation of her obligations under section 18006 of the CARES Act.

Thus, this FCA action is not a run-of-the-mill breach of contract action because, even without contractual duties, Infante-Green was still required to abide by section 18006's requirement to pay contractors and employees to the greatest extent practicable. Indeed, logically, most contracts between school districts and their employees and vendors are presumably premised on the continued operation of schools. But understanding that this once-in-a-generation pandemic would cause financial ruin for thousands of educational employees and contractors, Congress included a broad requirement in 18006 that those individuals and

3

businesses continued to be paid (with federal funds) even absent a contractual obligation to do so. Nothing in section 18006 or Infante-Green's interpretation of the same in her memorandum required school districts to continue to pay only those contractors with whom districts were contractually obligated to pay even after school closures. Instead, it referred to contractors generally, meaning those contractors with whom schools had existing contracts when the pandemic hit, and schools closed, regardless of any continued obligation to pay during the closure.

Just after quoting section 18006's greatest extent practicable requirement, Infante-Green's memorandum mentions transportation contractors specifically—which, of course, did not provide transportation services while school was closed—telling districts that RIDE has been in discussion with vendors, asking them to identify fixed costs that they believe must be paid "if they are in a position to provide necessary school transportation services to students when schools are re-opened." (ECF No. 1-4, p. 1). Thus, the Court's focus on whether this case is, in reality, a breach of contract action (and two purported reasonable interpretations of that contract) is misplaced. As pled, Infante-Green knew that compliance with section 18006 and the CARES Act required her and RIDE to negotiate in good faith with existing transportation vendors (including Ocean State) even if she believed there was no contractual obligation to pay during school closures.

## II.     Whether Infante-Green's certification is false is a question of fact

The Court's order recognizes that the First Circuit has not decided whether an objective falsehood is required under the FCA but has held that expressions of opinion, scientific judgment, or statements as to conclusions about which reasonable minds may differ cannot be false." ECF No. 26, p. 13 (quoting *United States ex rel. Jones v. Brigham & Women's Hosp.*, 678 F.3d 72, 87 (1st Cir. 2012)). In *Jones*, however, the First Circuit reversed a district court's

4

summary judgment order, finding that a question of fact remained as to whether statements on a federal grant application regarding the reliable scientific methodologies used were false. 678 F.3d at 87-88.

Similarly, in *United States v. AseraCare, Inc.*, 938 F.3d 1278, 1303 (11th Cir. 2019)—the only other circuit cited besides *Kellogg* that appears to have adopted the objective falsehood requirement—the Eleventh Circuit affirmed in part and reversed in part the grant of summary judgment, remanding the case "to determine whether a triable issue existed regarding falsity."

In applying this objective falsehood requirement here, the Court noted that Infante-Green argued "she had an objectively reasonable interpretation of RIDE's contract with Ocean State." (ECF No. 26, p. 13). Even assuming that Infante-Green's interpretation is relevant to the falsity element (which Ocean State does not believe it is), her interpretation of the contract should not be considered at this stage of the litigation. While the First Circuit in *Jones* held that statements of opinion or scientific judgment alone cannot sustain an FCA claim, the First Circuit has also held that "the fact that an allegedly false statement constitutes the speaker's opinion does not disqualify it from forming the basis of FCA liability" if "the speaker knows facts which would preclude such an opinion." *U.S. ex rel. Loughren v. Unum Grp.*, 613 F.3d 300, 310 (1st Cir. 2010). This holding mirrors the Ninth Circuit's rejection of the objective falsehood requirement in *Winter ex rel. United States v. Gardens Reg'l Hosp. and Med. Center, Inc.*, 953 F.3d 1108, 1119 (9th Cir. 2020), holding that "any opinion can be false or fraudulent" if, for example, "the opinion is not honestly held, or if it implies the existence of facts … that do not exist."

The allegations in Ocean State's Complaint align with the holdings in *Loughren* and *Winter*. The Complaint alleges that Infante-Green signed a certification to receive federal funds agreeing to comply with all provisions of the CARES Act, that she knew that section 18006

5

required that RIDE and other Rhode Island educational agencies negotiate in good faith with their existing contractors (not just those for which RIDE had a contractual obligation to pay) and that Infante-Green knew RIDE was not complying and would not comply with those obligations. Thus, even if certain decisions involve Infante-Green's opinion or interpretation of the contract, they can still sustain an FCA claim if Infante-Green gave those opinions despite knowing that section 18006 required the opposite.

Under these facts, Ocean State sufficiently pled the falsity element of an FCA claim.

### III.     The Complaint sufficiently alleges the requisite scienter, and the Court's decision made an impermissible finding of fact in deciding that it did not.

In concluding that Ocean State did not adequately allege scienter in its Complaint, the Court reasoned that the Commissioner's supposedly reasonable interpretation of RIDE's contract with Ocean State coupled with the elasticity of § 18006's "greatest extent practicable standard" "mean that more facts are necessary to plausibly show that the Commissioner acted with scienter." (ECF No. 26, at 16.) At the same time, in concluding that the question of qualified immunity cannot be decided in the context of the Defendants' motion to dismiss, the Court stated that whether Infante-Green knew that RIDE was not complying with the CARES Act when she signed the certification is a question of fact:

> Ocean State argues that, even if qualified immunity can apply to [a False Claims Act] claim, the well-pled facts would overcome it, as Ocean State has alleges that Infant-Green did, in fact, know that RIDE was not complying with the CARES Act when she signed the certification, which included language that should have given the defendants clear notice of the liability they faced.
> *Whether or not this allegation is true is a question of fact*.

(ECF No. 26, at 9-10.) (Emphasis added.) Because scienter (as it related to qualified immunity) is a question of fact, and was sufficiently pled, the Court declined to dismiss the Complaint based on qualified immunity. *Id.*

The Court's decision is inherently inconsistent, concluding both that scienter is sufficiently pled to overcome a qualified immunity defense (*id.*) and that it is not to state a claim under the FCA (*id.* at 16). In deciding to dismiss Ocean State's FCA claim for failure to sufficiently plead scienter, the Court impermissibly resolved the very factual question that precluded dismissal based on qualified immunity and impermissibly decided it in the *movant's* favor. *See Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007). The Court assumed that the Commissioner's arguments related to her alternative interpretation of the parties' contract or the CARES Act *might* absolve her of liability under the False Claims Act, and then it assumed: (1) that the Commissioner interpreted the contract in the manner she now argues, and (2) that she interpreted the CARES Act as permitting her to completely withhold payment to Ocean State. Neither assumption is permissible in the context of a motion to dismiss. To the extent any ambiguity exists in the parties' contract, the Court is bound to accept Ocean State's interpretation to decide the defendants' 12(b)(6) motion. *See Sonoiki v. Harvard Univ.*, 37 F.4th 691, 711 (1st Cir. 2022).

Similarly, the Court must accept as true the Complaint's detailed factual allegations, and the accompanying memorandum signed by Commissioner Infante-Green, indicating that she actually understood the CARES Act to require payments to student transportation providers to the "greatest extent practicable" even if previously negotiated contractual provisions might excuse payment due to school closures. (Doc. 1, ¶¶ 32-35; ECF No. 1-4, at 4.) The Court must also accept that Commissioner Infante-Green decided to pay $0.00 to Ocean State despite her publicly professed understanding of the CARES Act's requirements and that, in light of these facts, she falsely certified to the United States that she was complying with the CARES Act's requirements when she knowingly was not. (ECF No. 1, ¶¶ 47, 81.) Despite these non-

7

conclusory allegations, the Court dismissed the Complaint because it impermissibly credited Infante-Green's unfounded arguments (in her opposition briefing) over the plausible and factually supported allegations. *See Const. Indus. And Laborers' Joint Pension Tr. v. Carbonite, Inc.*, 24 F.4th 1, 9-10 (1st Cir. 2021) (reversing dismissal of a securities fraud complaint finding that the defendants' innocent explanations of their public statements could not prevail over the factually supported allegations of scienter). The Court's simultaneous acceptance of Ocean State's scienter allegations in rejecting the defendants' qualified immunity defense and rejection of those same allegations in considering the substance of Ocean State's False Claims Act claim requires alteration or amendment of the judgment entered.

## IV.     Conclusion

Ocean State requests that the Court alter and amend its judgment (ECF No. 26) to address the issues raised above, finding that Ocean State adequately stated an FCA claim.

By: /s/ *Steven J. Boyajian*
Steven J. Boyajian (#7263)
**ROBINSON & COLE LLP**
One Financial Plaza, 14th Floor
Providence, RI 02903
Tel: (401) 709-3300
Fax: (401) 709-3399
sboyajian@rc.com

Jeffrey L. Schultz (admitted pro hac vice)
Jonathan R. Shulan (admitted pro hac vice)
Paul L. Brusati (admitted pro hac vice)
**ARMSTRONG TEASDALE LLP**
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
Telephone: 314.621.5070
Fax: 314.621.5065
jschultz@atllp.com
jshulan@atllp.com
pbrusati@atllp.com

*Attorneys for Plaintiff Ocean State Transit, LLC d/b/a Student Transportation of America, Inc.*

## REQUEST FOR ORAL ARGUMENT

Pursuant to LR Cv 7, Ocean State requests oral argument and estimates that the hearing will require one hour.

/s/ *Steven J. Boyajian*

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2023, the foregoing was filed electronically with the Clerk of Court to be served through the Court's electronic filing system upon all parties of record.

/s/ *Steven J. Boyajian*