IN THE UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* OCEAN STATE TRANSIT, LLC d/b/a Student Transportation of America, Inc., *a Rhode Island limited liability company*, <br><br> Plaintiff, <br><br> vs. <br><br> ANGELICA INFANTE-GREEN, *in her personal capacity*, <br> JOHN AND JANE DOES 1-5, *in their individual capacities*, <br><br> Defendants. | No. 1:21-cv-00391-MSM-PAS |

## NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF MOTION TO ALTER OR AMEND

On June 1, 2023, the Supreme Court resolved the "objective falsehood" circuit split, holding that the "FCA's scienter element refers to respondents' knowledge and subjective beliefs—not to what an objectively reasonable person may have known or believed." *United State ex rel. Schutte v. SuperValu Inc.*, -- U.S. --, 2023 WL 3742577, at *6 (June 1, 2023). The Supreme Court held that, under the FCA, "[f]or scienter, it is enough if respondents believed that their claims were not accurate." *Id*. at *10.

Ocean State's False Claims Act ("FCA") claim pleads exactly what *Schutte* requires: Infante-Green understood what paying contractors "to the greatest extent practicable" required her to do and signed a certification knowing or believing she had failed to abide by her own interpretation of that statute. Any alleged ambiguity in the phrase "greatest extent practicable" does not preclude a finding that Infante-Green knew her certification was false. Indeed, the Supreme Court expressly concluded that such an alleged ambiguity does not preclude a finding that a defendant knew her claim was false: "And, even though the phrase 'usual and customary'

may be ambiguous on its face, such facial ambiguity alone is not sufficient to preclude a finding that respondents knew their claims were false." *Id*. at *6.

Under this new authority, and for the reasons already stated in Ocean State's Motion to Alter or Amend, the Court should amend its April 28 judgment and find that Ocean State adequately stated a claim under the FCA against Infante-Green.

**I.     The Supreme Court's holding in *Schutte*.**

**A.     The FCA action**

In *Schutte*, the relators brought a FCA action against retail drug pharmacies. *Id*. at *3. The relators claimed the pharmacies overcharged Medicare and Medicaid programs. *Id*. The regulations required pharmacies to charge and disclose their "usual and customary" price for that drug when seeking reimbursement. *Id*. Relators alleged the defendant pharmacies falsely reported higher prices than the discounted prices they usually and customarily charged. *Id* at *3.

While the phrase "usual and customary" appeared open to interpretation, the relators alleged that the pharmacies were informed that their discounted prices were their "usual and customary" prices, believed those prices were their "usual and customary" prices, and hid their discounted prices from regulators and contractors. *Id*. In support, the relators presented notices the pharmacies received indicating that "usual and customary" refers to discounted prices, as well as emails between executives expressing concern for the integrity of their usual and customary price practices. *Id*.

**B.     Proceedings at the district court and Seventh Circuit**

On summary judgment, the pharmacies challenged two elements of the FCA claim: (1) the falsity of the claim, and (2) the defendants' knowledge of the claim's falsity (i.e., scienter). *Schutte*, 2023 WL 3742577, at *5. The district court ruled against the pharmacies on the falsity element, holding that the pharmacies' discounted prices were its "usual and customary" prices

and that, by not reporting them, the pharmacies submitted false claims. *Id*. On scienter, however, the district court ruled for the pharmacies, holding that they could not have acted "knowingly." *Id*. The district court granted summary judgment for the pharmacies.

The Seventh Circuit affirmed. The Seventh Circuit asked whether the pharmacies' actions "were consistent with any objectively reasonable interpretation of the relevant law that had not been ruled out by definitive legal authority or guidance." *Id*. Applying that standard, the Seventh Circuit held that the pharmacies' actions aligned with an objectively reasonable interpretation of the phrase "usual and customary." *Id*. What mattered, the Seventh Circuit held, was that someone else, standing in defendants' shoes, may have reasonably thought that it was appropriate to report the retail prices as usual and customary. *Schutte*, 2023 WL 3742577, at *5

C. **The Supreme Court rejects the objectively reasonable standard**

The Supreme Court granted certiorari to resolve whether the FCA scienter element can be met by showing that the defendant (subjectively) believed their claims to be false: "If respondents' claims were false and they actually thought that their claims were false—because they believed that their reported prices were not actually their 'usual and customary' prices—then would they have 'knowingly' submitted a false claim within the FCA's meaning?" *Id*. The Court answered yes: "The FCA's scienter element refers to respondents' knowledge and subjective beliefs—not to what an objectively reasonable person may have known or believed." *Id*. at 6. Importantly, it does not matter that the phrase "usual and customary" may be ambiguous on its face because "such facial ambiguity alone is not sufficient to preclude a finding that respondents knew their claims were false." *Id*. at 6. On its face, the Court held, "the FCA's standards focus primarily on what respondents thought and believed." *Id*. at 7.

The Supreme Court rejected the approach taken by the Seventh Circuit, which reasoned that "because *other* people might make an honest mistake, defendants' subjective beliefs became

3

irrelevant to their scienter." *Id*. While the terms "usual and customary," in isolation, may have been ambiguous, the Supreme Court held, "that ambiguity does not preclude respondents from having learned their correct meaning—or, at least, becoming aware of a substantial likelihood of the terms' correct meaning." *Id*. at 8. Thus, the facial ambiguity of the phrase does not by itself preclude a finding of scienter under the FCA. *Id*.

Ultimately, if the elements of scienter are shown (or, in this case, plead), "then it does not matter whether some other, objectively reasonable interpretation of 'usual and customary' would point to respondents' higher prices." *Id*. at 10. To establish scienter, "it is enough if respondents believed that their claims were not accurate." *Schutte*, 2023 WL 3742577, at *10.

**II.      This Court should amend its judgment based on this new authority**

In the April 28 order and judgment, the Court accepted Infante-Green's argument that her certification that RIDE "shall to the greatest extent practicable" continue to pay its contractors cannot constitute an objective falsehood "because she had an objectively reasonable interpretation of the terms of RIDE's contract with Ocean State that did not require payment" once school closed. ECF Doc. 26 at 13. This argument was rejected by *Schutte*.

How a different, objective person may have interpreted RIDE's obligations under the contract or the CARES Act does not matter. Here, Ocean State adequately alleged that Infante-Green herself knew what she needed to do under the "greatest extent practicable" language—per her memorandum—and falsely certified she would comply with that requirement knowing RIDE would not comply and was not complying. Under *Schutte*, that is all that is required to state an FCA claim.

Importantly, this action is merely at the pleading stage. Despite the early stage of this litigation, Ocean State has already pleaded Infante-Green's subjective belief based upon her publicly expressed understanding of what the CARES Act required as set forth in a guidance

4

memorandum that she issued. Essential to the analysis in *Schutte* were the internal emails between executives (presumably obtained through discovery) discussing the "usual and customary" requirement, what they were supposed to do under that requirement, and expressing concern that the pharmacies did not satisfy that requirement. In dismissing this action before discovery is even permitted, the Court here has prevented Ocean State from discovering similar additional evidence, beyond what is already known based upon the Commissioner's public guidance memorandum, that may provide further support that Infante-Green knew her CARES Act certification was false.

While the Supreme Court in *Schutte* only addressed the scienter element, not falsity, it implied in a footnote that where an FCA claim turns on a defendant's subjective belief based on the information they knew when they submitted the false claim—which Ocean State's claim here is—"in this context, the scienter requirement of the FCA is plainly directed to the falsity of the claims submitted." *Id*. at *7 n. 4. And this Court's order noted that its conclusion on falsity—that Infante-Green had an objectively reasonable interpretation of her obligations under the contract—"impacts the Court's scienter analysis, as well." ECF No. 26 at 15.

Indeed, this Court gave two overarching reasons for finding a lack of scienter here: (1) the lack of standards in section 18006, and (2) the existence of a reasonable alternative interpretation of Ocean State's contract mean that more facts are necessary to plausibly show that Infante-Green acted with scienter. ECF Doc. 26 at 16. The Court used both conclusions in finding a lack of falsity. But the Supreme Court in *Schutte* rejected these reasons for granting summary judgment on an FCA claim. As for the reasonable interpretation, the Supreme Court overruled the Seventh Circuit's application of that standard. As for the lack of standards in section 18006, like "usual and customary" in *Schutte*, just because "to the greatest extent

practicable" may be considered ambiguous "does not by itself preclude a finding of scienter under the FCA" if Ocean State can show (or plead) that Infante-Green knew how that phrase required her to act and she falsely claimed she was complying with it. *Schutte*, 2023 WL 3742577, at *8.

By: /s/ *Steven J. Boyajian*
Steven J. Boyajian (#7263)
**ROBINSON & COLE LLP**
One Financial Plaza, 14th Floor
Providence, RI 02903
Tel: (401) 709-3300
Fax: (401) 709-3399
sboyajian@rc.com

Jeffrey L. Schultz (admitted pro hac vice)
Jonathan R. Shulan (admitted pro hac vice)
Paul L. Brusati (admitted pro hac vice)
**ARMSTRONG TEASDALE LLP**
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
Telephone: 314.621.5070
Fax: 314.621.5065
jschultz@atllp.com
jshulan@atllp.com
pbrusati@atllp.com

*Attorneys for Plaintiff Ocean State Transit, LLC d/b/a Student Transportation of America, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 7, 2023, the foregoing was filed electronically with the Clerk of Court to be served through the Court's electronic filing system upon all parties of record.

/s/ *Steven J. Boyajian*