UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel* : <br> OCEAN STATE TRANSIT, LLC, d/b/a : <br> Student Transportation of America, Inc., : <br> a Rhode Island limited liability company, : <br> *Plaintiff* : <br> : <br> v. : <br> : <br> ANGÉLICA INFANTE-GREEN, : <br> in her personal capacity, JOHN and/or : <br> JANE DOES 1 – 5, in their individual : <br> capacities, : <br> *Defendants.* : | C.A. No. 1:21-cv-00391-MSM-PAS |

## DEFENDANT ANGÉLICA INFANTE-GREEN'S RESPONSE TO PLAINTIFF'S MOTION TO ALTER OR AMEND UNDER RULE 59(e)

Defendant Angélica Infante-Green ("Infante-Green") objects to Plaintiff and *qui tam* relator, Ocean State Transit, LLC, d/b/a Student Transportation of America, Inc.'s ("Ocean State") motion to alter or amend under Rule 59(e). None of Ocean State's purported grounds to vacate in its motion (ECF No. 28) or its notice of supplemental authority (ECF No. 30) qualify for the extraordinary remedy of Rule 59(e) relief. The first two grounds for Ocean State's motion – that this is not a breach of contract action and it has adequately pleaded falsity – are rehashes of prior arguments without any attempt to show how this Court committed clear error to justify extraordinary relief. Ocean State's third and final ground mainly relies upon the Supreme Court's recent decision in *United States ex rel. Schutte v. SuperValu Inc.*, 143 S. Ct. 1391 (2023), that issued after this Court dismissed the case, which held that a party's knowledge and subjective intent is controlling for scienter under the False Claims Act ("FCA"). Once again, Ocean State's argument is devoid of any persuasive reason to vacate this Court's judgment

because § 18006 of the CARES Act lacks any discernible standard by which to measure Infante-Green's alleged knowledge.

The gravamen of Ocean State's motion to reconsider is that Infante-Green "failed to abide by her own interpretation of section 18006 by failing to negotiate with Ocean State (a current RIDE contractor when the pandemic shut down schools) in good faith despite certifying to the United States that she would do so." ECF No. 28 at 2. This is a misstatement of Infante-Green's certification. The Complaint alleges that RIDE failed to pay Ocean State, and thus Infante-Green's certification that RIDE paid its contractors "to the greatest extent practicable" was not correct. The CARES Act does not say anything about negotiation. It simply states that agencies shall continue to pay their contractors "to the greatest extent practicable."

## I. STANDARD OF REVIEW

### A. Motions to Alter or Amend Under Rule 59(e)

The granting of a motion for reconsideration under Rule 59(e) is "an extraordinary remedy which should be used sparingly." *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006). "[I]t is very difficult to prevail on a Rule 59(e) motion." *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 7 n.2 (1st Cir. 2005); *Soto-Padró v. Pub. Bldgs. Auth.*, 675 F.3d 1, 9 (1st Cir. 2012) ("it is exceedingly difficult for a litigant to win a Rule 59(e) motion.").

"[F]ederal courts generally have [used] Rule 59(e) only" to "reconsider[ ] matters properly encompassed in a decision on the merits." *Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020). Generally, courts may grant a Rule 59(e) motion to take account of an intervening change in controlling law; to take account of newly discovered evidence; to correct a manifest legal error; and to prevent manifest injustice. *Marie*, 402 F.3d at 7 n.2; *see also Banister*, 140 S. Ct. at 1703 (change in controlling law); *Fed. Deposit Ins. Corp. v. World Univ., Inc.*, 978 F.2d

10, 16 (1st Cir. 1992); *Ruiz v. State of Rhode Island*, No. 16-507 WES, 2018 U.S. Dist. LEXIS 128710, at \*7 (D.R.I. Aug. 1, 2018). Rule 59(e) gives a district court the chance "to rectify its own mistakes in the period immediately following" its decision. *Banister*, 140 S. Ct. at 1703.

A Rule 59(e) motion to alter or amend a judgment may not be used to relitigate the same matters already determined by the court, unless the court's determination is based on what the First Circuit refers to as "clear legal error" or a "manifest error of law." *Soto-Padró*, 675 F.3d at 9; *see also City of Miami Fire Fighters' & Police Officers' Ret. Tr. v. CVS Health Corp.*, 46 F.4th 22, 36 (1st Cir. 2022); *Biltcliffe v. CitiMortgage, Inc.*, 772 F.3d 925, 930 (1st Cir. 2014); *Carrero-Ojeda v. Autoridad De Energía Eléctrica*, 755 F.3d 711, 723 (1st Cir. 2014).

Rule 59(e) motions are aimed at reconsideration, not initial consideration. *Fed. Deposit Ins. Corp. v. World Univ., Inc.*, 978 F.2d 10, 16 (1st Cir. 1992). Motions under Rule 59(e) may not be used to argue a new legal theory. *Id.*; *Banister*, 140 S. Ct. at 1703 (courts will not address new arguments or evidence that the moving party could have raised before the decision issued).

### B. Standard of Review for False Claims Act Allegations

The FCA "is not an all-purpose antifraud statute . . . or a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Universal Health Services, Inc. v. U.S.*, *ex rel Escobar ("Escobar")*, 579 U.S. 176, 194 (2016) (internal citations omitted). Causes of action under the FCA are subject to the heightened pleading standards for fraud allegations under Rule 9(b). *Lawton ex rel. v. Takeda Pharmaceutical Co., Ltd.*, 842 F.2d 125, 130 (1st Cir. 2016) (citing 31 U.S.C. § 3729(a)(1)).

To make out an FCA claim, Ocean State must prove, at a minimum, (i) that Infante-Green knowingly submitted or caused the submission of a claim for payment to the government or made, used, or caused to be made or used false records or statements to get claims paid by the

3

government, and (ii) that the claim for payment itself was false or fraudulent. 31 U.S.C. § 3729(a)(1); *Hagerty ex rel. United States v. Cyberonics, Inc.*, 844 F.3d 26, 31 (1st Cir. 2016). "[T]he defendant's presentation of false or fraudulent claims to the government is a central element of every False Claims Act case." *See United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 231 (1st Cir. 2004).

## II. ARGUMENT

### A. The FCA Claim is Based on an Alleged Breach of Contract.

Ocean State's motion to reconsider argues that its claim "is not premised solely on its interpretation of the parties' contract" and that "even without contractual duties" RIDE was required to pay its contractors. ECF No. 28 at 3. Ocean State already made this argument in opposition to Infante-Green's motion to dismiss, and Ocean State has offered no reason for this Court to utilize the "extraordinary remedy" of Rule 59(e) relief to relitigate the same issue. There is no clear legal error. *E.g.*, *Soto-Padró*, 675 F.3d at 9.

Ocean State's argument also fails to grasp the plain text of Section 18006 of the CARES Act, which requires an agency to "pay . . . its contractors" "to the greatest extent practicable." A contractor is a "party to a contract." *Black's Law Dictionary* (11th ed. 2019). If there is no contractual obligation to pay in the first place, a "contractor" like Ocean State is not entitled to any payment. As Infante-Green argued at length in her motion to dismiss, the parties disagree about the meaning of the contract between RIDE and Ocean State. Infante-Green's April 24, 2020 memorandum that is attached to the Complaint has no relevance to this analysis, but to the extent the Court is inclined to take the memorandum into account, Ocean State's argument on page four of its motion to reconsider omits the part of the memorandum in which Infante-Green specifically recommends that "[w]hether to extend and/or amend existing contracts *and/or*

*engage in competitive bidding . . . are individual business decisions that have to be made . . .*"
ECF No. 1-4 at 1 (emphasis added). Infante-Green did not opine that existing contractors must be paid in all instances as Ocean State suggests in its motion.

Ocean State is seeking to turn a decision about the enforceability of a contract between RIDE and Ocean State into a federal lawsuit against Infante-Green. Under the plain text of § 18006 of the CARES Act, if there is no contractual right to payment, there can be no false certification that RIDE failed to pay "its contractor," Ocean State, "to the greatest extent practicable."

B. **The Falsity of the Alleged Statement is Not Cognizable to Support an FCA Claim as a Matter of Law.**

Ocean State next argues that "even assuming that Infante-Green's interpretation is relevant to the falsity element [of an FCA claim] . . . her interpretation should not be considered at this stage of the litigation." ECF No. 28 at 4. This misconstrues the element of falsity that Ocean State must plead and ultimately prove for its FCA claim. As Infante-Green argued in her motion to dismiss, this suit is really a dispute over the meaning of a contract and whether Ocean State has a contractual right to payment. A garden-variety contractual dispute is beyond the reach of the FCA. *See Escobar*, 579 U.S. at 194. "[B]reach of contract claims are not the same as fraudulent conduct claims, and the normal run of contractual disputes are not cognizable under the [FCA]." *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1057 (9th Cir. 2011); *see Escobar*, 579 U.S. at 194. An FCA relator cannot base a fraud claim on nothing more than his own interpretation of a contract. To hold otherwise would render meaningless the fundamental distinction between actions for fraud and breach of contract. *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 378 (4th Cir. 2008); *United States ex rel. Williams v.*

*Medical Support Los Angeles*, No. 20-0198, 2021 U.S. Dist. LEXIS 245441, at *10 (C.D. Cal. Nov. 29, 2021).

This case is not a whistleblower suit to prevent fraud. Instead, it is a suit by an upset contractor who thinks that RIDE breached a contract. If the Court allows this case to proceed by vacating its judgment, public officials who are simply doing their jobs will be unreasonably exposed to significant personal liability for disputes over contractual terms and the meaning of "to the greatest extent practicable" – a phrase that is "standardless," or at the very least, one that "confers substantial discretion on funding recipients to determine the meaning of practicability." *See United States ex rel. Ocean State Transit, Ltd. Liab. Co. v. Infante-Green*, No. 1:21-CV-00391-MSM-PAS, 2023 U.S. Dist. LEXIS 74169, at *17-18 (D.R.I. Apr. 28, 2023); *Prof. Staff Congress/CUNY v. Rodriguez*, 478 F. Supp. 3d 509, 516-17 (S.D.N.Y. 2020). As this Court noted in its memorandum and order dismissing the case, "[e]xpressions of opinion, scientific judgments, or statements as to conclusions about which reasonable minds may differ cannot be false." *Ocean State Transit, Ltd. Liab. Co.*, 2023 U.S. Dist. LEXIS 74169, at *17-18 (quoting *United States ex rel. Jones v. Brigham & Women's Hosp.*, 678 F.3d 72, 87 (1st Cir. 2012)). Ocean State has not shown that this Court's conclusion was a "clear legal error" that warrants vacating this Court's judgment under Rule 59(e). *See Soto-Padró v.*, 675 F.3d at 9.

### C. The Complaint Failed to Alleged Scienter that is Cognizable under the FCA.

Finally, Ocean State argues that it pleaded the requisite scienter to survive a motion to dismiss. The scienter requirement in the FCA requires that a defendant present a false claim knowingly, which entails having "actual knowledge of the information[,]" acting "in deliberate ignorance of the truth or falsity of the information[,]" or acting "in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b). Here, Ocean State relies primarily on a

6

change in controlling law in the time since this Court issued its memorandum and order to warrant vacating the judgment under Rule 59(e), *see Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 7 n.2 (1st Cir. 2005); *Banister*, 140 S. Ct. at 1703, relying primarily on the Supreme Court's recently-announced decision in *United States ex rel. Schutte v. SuperValu Inc.*, 143 S. Ct. 1391 (2023). *See* ECF No. 30.

Ocean State is correct in its Notice of Supplemental Authority that the Supreme Court resolved a circuit split in *Schutte*, 143 S. Ct. 1391, and held that a defendant cannot rely on objective reasonableness for scienter under the FCA, instead holding that "[t]he FCA's scienter element refers to respondents' knowledge and subjective beliefs—not to what an objectively reasonable person may have known or believed." *Id.* This does not change the outcome of this Court's ruling. For starters, the Supreme Court addressed the element of scienter, not falsity. *Schutte*, 143 S. Ct. 1391 ("we did not grant certiorari to review . . . the meaning of the phrase 'usual and customary' or whether any of respondents' claims were, in fact, inaccurate or otherwise false.").

Nothing in the Supreme Court's ruling changes the many cases that hold that the FCA does not reach garden-variety breach of contract actions, *Escobar*, 579 U.S. at 194 (FCA is not a vehicle for punishing garden-variety breaches of contract), and it does not overturn the First Circuit's holding that "[e]xpressions of opinion, scientific judgments, or statements as to conclusions about which reasonable minds may differ cannot be false." *Brigham & Women's Hosp.*, 678 F.3d at 87. In addition, nothing in the Supreme Court's ruling overturned the rule that "[s]trict enforcement of the FCA's scienter requirement will . . . help to ensure that ordinary breaches of contract are not converted into FCA liability." *United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1271 (D.C. Cir. 2010).

More fundamentally, the Supreme Court's ruling in *Schutte* does not change this Court's conclusion that Infante-Green cannot act "knowingly" under the FCA when the law she is accused of breaking, the CARES Act, has no discernible standard. In *Schutte*, pharmacies were required to bill Medicare and Medicaid for their "usual and customary" drug prices; federal regulations limited reimbursement to the lower of two amounts, one of which was the healthcare provider's "usual and customary charges [for the drug] to the general public." 143 S. Ct. 1391. The plaintiffs in *Schutte* alleged that rather than submitting lower prices for reimbursement, the pharmacies instead reported their higher, non-discounted prices. *Id.* The Seventh Circuit in *Schutte* had held that the pharmacies were entitled to summary judgment because their actions were consistent with an objectively reasonable interpretation of the phrase "usual and customary,"— specifically, the Seventh Circuit reasoned that the phrase could have been understood as referring to retail prices, not a discounted price, even if the phrase, correctly understood, referred to discounted prices. The Seventh Circuit held that because other people might make an honest mistake, the pharmacies' subjective beliefs became irrelevant to their scienter even if they knew they were charging higher prices. The Supreme Court reversed, holding that the pharmacies' subjective intent controlled for scienter, even if an objectively reasonable interpretation supported the pharmacies' interpretation. *Id.* Notably, the appeal did not focus on the lower court's ruling on falsity that the pharmacies' discounted prices were its "usual and customary" prices and that, by not reporting them, the pharmacies submitted claims that were false. *Id.*

The holding in *Schutte* has no bearing on Infante-Green's knowledge of the meaning of "the extent practicable" in § 18006 of the CARES Act. In *Schutte*, the plaintiff alleged the pharmacies knew what their "usual and customary" discounted prices were for medications, and

8

intentionally charged the government a higher rate than the "usual and customary price." The "usual and customary" price of medication was in the control and knowledge of the pharmacies.

Here, by contrast, there is no discernible standard against which to measure Infante-Green's alleged intent. The Supreme Court recognized in *Schutte* that misrepresentations of law were not actionable at common law, and by extension are not likely actionable under the FCA. 143 S. Ct. 1391. As the Supreme Court recognized in *Schutte*, a statement such as "this is what 'usual and customary' means" is not actionable as intentional fraud under the FCA. 143 S. Ct. 1391. As applied here, no matter what authority this Court looks to – whether it be the United States Supreme Court, the First Circuit, the Rhode Island Supreme Court, or courts outside this Circuit – Ocean State has not identified a single reported court decision anywhere that contains an interpretation in its favor on the meaning "to the greatest extent practicable" in § 18006 of the CARES Act. Ocean State seeks to hold Infante-Green liable for an alleged massive government fraud (respectfully, an absurd premise on its face), simply for trying to understand the meaning of a statutory phrase that had no measurable standard.

As this Court noted when it dismissed this case, "there is only one case in which a district court has ruled on what the 'to the greatest extent practicable' language in the CARES Act requires." *Ocean State Transit*, 2023 U.S. Dist. LEXIS 74169, at *16 (citing *Professional Staff Congress/CUNY*, 478 F. Supp. 3d at 514). This Court acknowledged *Professional Staff Congress/CUNY's* central holding that "§ 18006 is a 'standardless statute' and that 'its limitation to what is to the greatest extent practicable is effectively lacking in any real standards,'" and then proceeded to reason:

> The [*Professional Staff Congress/CUNY*] opinion is not binding on this court, but its reasoning is persuasive. Even if the Court does not adopt its full determination that § 18006 is completely standardless, *the statute confers substantial discretion on funding recipients to determine the meaning of practicability. This discretion*,

9

> along with the Commissioner's alternative interpretation of its contract terms with Ocean State — under which Ocean State could reasonably be considered to not be entitled to payment — *together paint a picture that the Commissioner's certification that it would pay its contractors "to the greatest extent practicable" was a "statement[] as to [a] conclusion[] about which reasonable minds may differ*."

*Ocean State Transit, Ltd. Liab. Co.*, 2023 U.S. Dist. LEXIS 74169, at *17-18 (emphasis added) (internal citations omitted).

The only shred of alleged scienter that Ocean State relies upon is Infante-Green's April 24, 2020 memorandum that is attached to the Complaint, but to the extent Infante-Green's memorandum has any relevance at all, the motion to reconsider ignores the significant discretion that Infante-Green recommended to local education agencies. The memorandum states that RIDE "has been in discussion with its vendors and asked them to identify fixed costs that they believe must be paid if they are to be in a position to provide necessary school transportation services to students when schools are re-opened. RIDE is doing its best to determine whether financial support to help our vendors meet these costs is practicable . . . *Whether to extend and/or amend existing contracts and/or engage in competitive bidding, and the specific terms of any new agreement, are individual business decisions that will have to be made . . .*" ECF No. 1-4 at 2 (emphasis added). Later in the memorandum, Infante-Green emphasizes there is no "one size fits all approach," ECF No. 1-4 at 2, "the CARES Act requirement that LEA efforts to pay staff be made 'to the greatest extent practicable' requires individualized consideration at the local level," ECF No. 1-4 at 5, and "keep in mind that this is also a working document, which may be updated due to the rapidly changing response to this pandemic emergency . . ." ECF No. 1-4 at 6. By its plain terms, Infante-Green's memorandum conferred substantial discretion on procurement decisions.

10

Contrary to Ocean State's argument, there is also nothing inconsistent about this Court's ruling on qualified immunity and scienter. *See* Plaintiff's Motion, ECF No. 28 at 7. In the context of qualified immunity, a knowing violation requires clarity in the law to give the defendant "fair warning" of what constitutes illegal conduct. *See Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009). This Court simply held that the record should be developed before the Court determines whether "to take a completely novel action" and apply qualified immunity.

At bottom, Ocean State has not shown a relevant change in controlling law or any other reason to warrant granting the extraordinary relief of vacating this Court's judgment. *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006); *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 7 n.2 (1st Cir. 2005). The Complaint's allegations simply beg the question of whether RIDE was contractually obligated to continue to pay Ocean State. As Infante-Green argued at length in her motion to dismiss, the FCA is not a proper vehicle to litigate a breach of contract action in the context of a standardless statute like § 18006 of the CARES Act. This Court properly found that a public official should be not subject to millions of dollars in personal liability under the FCA based on a statute without a discernible standard. The FCA is a fraud statute, and fraud requires scienter. Infante-Green could not have known that she was making a false statement to the Government based on a statute lacking any real standards.

## III. CONCLUSION

For the above-stated reasons, Infante-Green respectfully requests that the Court deny the relief sought in Ocean State's motion to alter or amend under Rule 59(e) and its notice of supplemental authority, and that the Court issue an order affirming final judgment in favor of Infante-Green.

Defendant,

ANGÉLICA INFANTE-GREEN,

By her Attorneys,

/s/ *Robert Clark Corrente*
/s/ *Matthew H. Parker*
/s/ *Timothy K. Baldwin*
Robert Clark Corrente (#2632)
Matthew H. Parker (#8111)
Timothy K. Baldwin (#7889)
WHELAN CORRENTE *&* FLANDERS LLP
100 Westminster Street, Suite 710
Providence, RI 02903
Tel. (401) 270-4500
Fax (401) 270-3760
rcorrente@whelancorrente.com
mparker@whelancorrente.com
tbaldwin@whelancorrente.com

Dated: June 23, 2023

WC90024.DOCX