# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA, *ex rel.* )
OCEAN STATE TRANSIT, LLC d/b/a )
Student Transportation of America, Inc., *a* )
*Rhode Island limited liability company*, )
        Plaintiff, )
)
vs. )   No. 1:21-cv-00391-MSM-PAS
)
ANGELICA INFANTE-GREEN, *in her* )
*personal capacity*, )
JOHN AND JANE DOES 1-5, *in their* )
*individual capacities*, )
        Defendants. )

## REPLY IN SUPPORT OF MOTION TO ALTER OR AMEND

The Supreme Court's decision in *Schutte* controls, and the Court should alter or amend its judgment to find that Ocean State pleaded an action against Infante-Green under the False Claims Act.[1]

*Schutte* rejected the precise argument Infante-Green makes in her opposition. Infante-Green claims that there is no discernible standard against which to measure whether she falsely certified compliance with "the greatest extent practicable" requirement. ECF No. 31 at 9. Likewise, in *Schutte*, the pharmacies focused "on the inherent ambiguity of the phrase at issue here, asserting they could not have 'known' that their claims were inaccurate because they could not have 'known' what the phrase 'usual and customary' actually meant." *United States ex rel. Schutte v. SuperValu, Inc.*, 143 S.Ct. 1391, 1401 (2023). The Supreme Court disagreed. In so holding, the Court did not focus on the lack of statutory definition or case law interpreting the

---

[1] While this reply emphasizes *Schutte* (because it controls), Ocean State believes that, even absent *Schutte*, its arguments in opposing the motion to dismiss and moving to alter or amend independently give this Court a basis to find that the complaint stated a claim under the False Claims Act.

phrase "usual and customary" (like Infante-Green does) but on the presence of *evidence*

presented by the plaintiffs showing what the pharmacies knew about the phrase "usual and

customary" before making the allegedly false certifications:

> According to petitioners, respondents received notice that the phrase "usual and customary" referred to their discounted prices (in some cases, it seems, from the same entities to which they reported their prices). And, according to petitioners, respondents comprehended those notices and then tried to hide their discounted prices. If that is true, then perhaps respondents actually knew what the phrase meant; or perhaps respondents were aware of an unjustifiably high risk that the phrase referred to their discounted prices. And, if that is true, then respondents may have known that their claims were false. The facial ambiguity of the phrase thus does not by itself preclude a finding of scienter under the FCA.

*Id*. at 1402.

Rather than appreciating that the plaintiffs in *Schutte* conducted discovery and

presented evidence proving the falsity and scienter elements, Infante-Green claims that

because, on its face, there is no statutory definition or case law interpreting the phrase

"greatest extent practicable," the complaint must be dismissed at the pleading stage. But

in rejecting the pharmacies' pleas for summary judgment, *Schutte* did not focus on a

statutory definition or legal interpretation of the phrase "usual and customary." Instead, it

concentrated on what the pharmacies subjectively knew about that phrase from the

evidence and information they received before certifying compliance with the regulation.

Whether Infante-Green received information as to what section 18006 of the

CARES Act required of her and RIDE before drafting her detailed memorandum to all

Rhode Island educational districts is not at issue at the pleading stage. If discovery shows

she was told that section 18006 required one thing, she certified that did and would

comply with that requirement, then did the opposite, the falsity and scienter elements are

satisfied. Indeed, the scienter element would be satisfied simply by showing that Infante-

Green was aware of a substantial risk that complete non-payment to a contractor was inconsistent with an obligation to pay contractors to the "greatest extent practicable."

At this stage, however, it is premature to say that because there is no statutory or judicial interpretation of the phrase "to the greatest extent practicable," an FCA action fails. *Schutte* rejected this exact theory. The Court should amend or alter its judgment.

I.      **Under *Schutte*, the false certification of compliance with a subjective statute or regulation can sustain an FCA action**

*Schutte*'s simple traffic illustration shows why Infante-Green's "no discernable standard" argument is wrong.

In dismissing the pharmacies' argument that they could not have possibly known what the ambiguous phrase "usual and customary" meant, the Supreme Court gave an example of a driver who sees a sign that says "Drive Only Reasonable Speeds." *Id*. at 1402. "That driver, without any more information, might have no way of knowing what speeds are reasonable and what speeds are too fast." *Id*. But suppose, *Schutte* explained, that a police officer informed that same driver earlier in the day that speeds over 50 mph are unreasonable. *Id*. And also suppose that same driver noticed that all the other cars around him are going only 48 mph. *Id*. "In that case, the driver might know that 'Reasonable Speeds' are anything under 50 mph; or, at the least, he might be aware of an unjustifiably high risk that anything over 50 mph is unreasonable." *Id*. "Indeed, if the same police officer later pulled the driver over, we imagine that he would be hard pressed to argue that some other person might have understood the sign to allow driving at 80 mph." *Id*.

In this example, the phrase "reasonable speeds" does not have any finite definition or standard under the law. Still, *Schutte* held, from the information the driver had, the driver could not have possibly thought that driving 80 mph was reasonable. The same is true for Infante-

Green. If Infante-Green was "aware of [] a substantial and unjustifiable risk" that complete non-payment to Ocean State was not payment "to the greatest extent practicable," then the scienter element of the FCA is satisfied. *Schutte*, 143 S. Ct. at 1404. While the CARES Act does not specifically define what it means to continue to pay contractors "to the greatest extent practicable," Infante-Green could not have possibly thought that her actions in failing to even negotiate with Ocean State in good faith and paying Ocean State nothing (despite receiving $581,000,000 in CARES Act funds)—facts that are specifically plead in the complaint—complied with that requirement. *See* ECF No. 1, ¶ 16, 73, 77–83.

And again, this is the pleading stage. Like the pharmacies and the hypothetical driver in *Schutte*, discovery may reveal that Infante-Green received information or guidance as to what paying contractors "to the greatest extent practicable" meant. Or, like the driver in *Schutte* who saw other drivers going under 50 mph, she may have reviewed how commissioners in other states negotiated with their current transportation contractors, perhaps showing that every other state commissioner and educational agency negotiated in good faith with their contractors rather than ignoring good faith communications from those contractors and paying them nothing (like Infante-Green and RIDE did here). Again then, this evidence would reveal that Infante-Green could not have reasonably believed her actions complied with her certification, agreeing she did and would comply with all relevant provisions and requirements of the CARES Act. That very certification told Infante-Green that failing to abide by "all relevant provisions and requirements of the CARES Act" may result in FCA liability and it appears only a few pages above the "to the greatest extent practicable" provision. *Compare* ECF No. 1-5 at 5 *with* ECF No. 1-5 at 13.

Infante-Green's emphasis on the lack of any statute or case interpreting the phrase "to the greatest extent practicable" is misplaced. Under the reasoning of *Schutte*, Ocean State pleaded a claim under the FCA.

**II.      In this context, falsity and scienter are inextricably connected**

Infante-Green is right that *Schutte* did not directly address the falsity element. But like this Court correctly did in its order here, *Schutte* entwined the two elements, implying that, in a case like this, satisfying the scienter requirement under the FCA necessarily satisfies falsity.

*Schutte* broadly noted that, on their face and at common law, "the FCA's standards focus primarily on what respondents thought and believed." 143 S.Ct. at 1400. That can be shown in one of three ways: (1) the person has actual knowledge of the information; (2) the person acts in deliberate ignorance of the truth or falsity of the information; or (3) the person acts in reckless disregard of the truth or falsity of the information. *Id*. at 1399.

As to the first, "the term 'actual knowledge' refers to whether a person is 'aware of' information." *Id*. at 1400. The pharmacies in *Schutte* argued that "information" can refer only to purely factual information. *Id*. at 1400 n. 4. The Supreme Court rejected this interpretation, holding that "'information' is broad, referring to all 'knowledge obtained from investigation, study, or instruction.'" *Id*. And, "in this context, the scienter requirement of the FCA is plainly directed to the falsity of the claims submitted." *Id*.

Thus, while *Schutte* did not directly address the falsity element, under this holding, Ocean State can satisfy both scienter and falsity if it shows that Infante-Green had "knowledge obtained through investigation, study, or instruction" as to what the CARES Act required of her, yet still failed to comply with that statute. The complaint is replete with allegations that Infante-Green had that knowledge.

Indeed, this Court's order seemed to correctly recognize that falsity and scienter are connected, addressing them in the same section. ECF No. 26 at 12. And the Court's reasons for finding that Ocean State failed to plead both—Infante-Green's objectively reasonable interpretation of the contract and the "lack of standards" in section 18006—were the same. ECF No. 26 at 12–16. Now, under *Schutte*, neither reason is sufficient for dismissing this FCA action.

**III.          Misrepresentation of law vs. misrepresentation of fact**

In a last gasp to hold their summary judgment, the pharmacies in *Schutte* argued that their conduct is not actionable because fraud (at both the common law and under the FCA) does not encompass misrepresentations of law. From this argument, Infante-Green claims that the Supreme Court "recognized in *Schutte* that misrepresentations of law were not actionable at common law, and by extension are not likely actionable under the FCA." ECF No. 31 at 9. Thus, the argument goes, Ocean State is merely seeking to hold Infante-Green liable for a misrepresentation of law, not fact. Infante-Green quotes no such holding in *Schutte*; because there is none.

This part of the opinion came from the Supreme Court's description of the pharmacies' argument, not its holding: "Their argument is as follows: At common law, misrepresentations of law are not actionable; only misrepresentations of fact are." 143 S.Ct. at 1403. While the court recognized that "many courts" (notably, not the Supreme Court) have stated as a general rule that misrepresentations of law are not actionable at common law, for "purposes of these cases, *we assume without deciding* that the FCA incorporates some version of this rule; even then, the rule has significant limits on its own terms." *Id*. (emphasis added)

*Schutte* then immediately announced one of those limitations, holding that "statements involving some legal analysis remain actionable if they carry with them by implication an assertion about facts that justify the speaker's statement." *Id*. at 1403. Again, *Schutte* gave

helpful examples. If a legal advisor told a plaintiff, "your claim will be dismissed because federal courts lack jurisdiction over claims like that," that representation might not be actionable as fraud. *Id*. But a person might be liable for falsely stating that "the plumbing work that I did on your house complied with state law." *Id*. Unlike the first, this second statement "says something about both the correct meaning of building codes *and* the facts about the home's construction." *Id*. at 1403–1404.

The Supreme Court held that the pharmacies are more like the plumber than the legal advisor: "Rather than saying, 'this is what usual and customary means,' respondents essentially said, 'this is what our 'usual and customary' prices are.'" *Id*. at 1404. The same is true here. Infante-Green's false statement (as alleged in the complaint) is not "this is what greatest extent practicable means" but rather, "Rhode Island's educational agencies continued to pay our contractors to the greatest extent practicable as required by the CARES Act." Under *Schutte*, such a statement is actionable.

## IV.        Conclusion

For these reasons and those in the motion, the Court should alter or amend its judgment to find that Ocean State stated a claim under the FCA.

By: /s/ *Steven J. Boyajian*
Steven J. Boyajian (#7263)
**ROBINSON & COLE LLP**
One Financial Plaza, 14th Floor
Providence, RI 02903
Tel: (401) 709-3300
Fax: (401) 709-3399
sboyajian@rc.com

Jeffrey L. Schultz (admitted pro hac vice)
Jonathan R. Shulan (admitted pro hac vice)
Paul L. Brusati (admitted pro hac vice)
**ARMSTRONG TEASDALE LLP**
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
Telephone: 314.621.5070
Fax: 314.621.5065
jschultz@atllp.com
jshulan@atllp.com
pbrusati@atllp.com

*Attorneys for Plaintiff Ocean State Transit, LLC*
*d/b/a Student Transportation of America, Inc.*

## REQUEST FOR ORAL ARGUMENT

Pursuant to LR Cv 7, Ocean State requests oral argument and estimates that the hearing will require one hour.

/s/ *Steven J. Boyajian*

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2023, the foregoing was filed electronically with the Clerk of Court to be served through the Court's electronic filing system upon all parties of record.

/s/ *Steven J. Boyajian*