UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* OCEAN STATE TRANSIT, LLC, d/b/a Student Transportation of America, Inc., *a Rhode Island limited liability company*<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ANGELICA INFANTE-GREEN, *in her personal capacity,* JOHN, AND JANE DOES 1-5, *in their individual capacities,*<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No. 1:21-CV-00391-MSM-PAS<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

O R D E R

Mary S. McElroy, United States District Judge.

This matter is a qui tam suit brought by Ocean State Transit, LLC ("Ocean State") against the defendant Rhode Island Commissioner of Elementary and Secondary Education Angélica Infante-Green ("the Commissioner"), alleging that she violated the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, by falsely certifying that the Rhode Island Department of Elementary and Secondary Education ("RIDE") complied with certain federal COVID-19 relief statutes (namely, the CARES Act), which required RIDE "to the greatest extent practicable, continue to pay its employees and contractors during the period of any disruptions or closures related to the coronavirus."

1

This Court granted the Commissioner's Motion to Dismiss, resulting in a judgment in her favor. (ECF Nos. 26 & 27.) Now, pursuant to Fed. R. Civ. P. 59(e), Ocean States moves for the Court to alter or amend that judgment.

The granting of a motion under Rule 59(e) is "an extraordinary remedy which should be used sparingly." *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006). To prevail, the moving party must show "an intervening change in the controlling law, a clear legal error, or newly discovered evidence." *Soto-Padro v. Pub. Bldgs. Auth.*, 675 F.3d 1, 9 (1st Cir. 2012). Here, among its arguments, Ocean State argues a change in the controlling law, pointing to an opinion of the United States Supreme Court, *United States ex rel. Schutte v. SuperValu Inc.*, 143 S. Ct. 1391 (2023), issued on June 1, 2023, after this Court's April 28, 2023, granting of the Commissioner's Motion to Dismiss and entry of the judgment.

An FCA claim has two essential elements: (1) falsity of the claim and (2) a scienter requirement—the defendant's knowledge of the claim's falsity. *Schutte*, 143 S. Ct. at 1399. In *Schutte*, the Supreme Court resolved a circuit split over whether, on the scienter element, an FCA claimant must allege a statement or conduct that represents an "objective falsehood." The Supreme Court rejected the "objective falsehood" requirement and held instead that the "FCA's scienter element refers to respondents' knowledge and subjective beliefs—not to what an objectively reasonable person may have known or believed." *Id.*

The plaintiffs in *Schutte* brought qui tam actions under the FCA against retail drug pharmacies, alleging that they knowingly overcharged Medicare and Medicaid

2

when they sought reimbursement from those programs. *Id.* at 1397-98. The Federal Centers for Medicare and Medicaid Services regulations required the pharmacies limit reimbursement to the "usual and customary charges [for the drug] to the general public." *Id.* at 1396. The defendant pharmacies reported their higher retail pricing instead of their popular discounted pricing. *Id.* at 1397. The plaintiffs, however, contended that the discounted pricing was the actual "usual and customary" pricing. *Id.*

While the phrase "usual and customary" appeared open to interpretation, the plaintiffs argued that the pharmacies were informed that their discounted prices were their "usual and customary" prices, believed those prices were their "usual and customary" prices, and hid their discounted prices from regulators and contractors. *Id.* at 1398. In support of these arguments, the plaintiffs presented evidence in response to the pharmacies' motions for summary judgment that the pharmacies had received notices from authorities that "usual and customary" refers to discounted prices and the plaintiffs produced email exchanges between pharmacy executives raising concerns about letting state agencies or pharmacy benefit managers find out about discounted prices. *Id.*

The district court, and the Seventh Circuit on appeal, held that the pharmacies had submitted false claims by not reporting their discounted prices as their "usual and customary" prices. *Id.* But, on the scienter element, the Seventh Circuit, applying the "objective falsehood" standard, held that the pharmacies were "entitled to summary judgment because their actions were consistent with an objectively

3

reasonable interpretation of the phrase 'usual and customary.'" *Id.* at 1399. Applying that standard, the Seventh Circuit "reasoned that the phrase *could* have been understood as referring to respondents' retail prices, not their discounted prices—even if the phrase, correctly understood, referred to their discounted prices. It thus did not matter whether [the pharmacies] thought that their discounted prices were actually their 'usual and customary' prices." *Id.* What mattered was that someone else, standing in defendants' shoes, may have reasonably thought that it was appropriate to report the retail prices as "usual and customary." *Id.*

The Supreme Court, however, held that the "FCA's scienter element refers to respondents' knowledge and subjective beliefs—not to what an objectively reasonable person may have known or believed." *Id.* Moreover, it did not matter that the phrase "usual and customary" may be ambiguous because "such facial ambiguity alone is not sufficient to preclude a finding that respondents knew their claims were false." *Id.* The FCA's "standards focus primarily on what respondents thought and believed." *Id.* at 1400. Thus, while the phrase "usual and customary" may have been ambiguous in isolation, "that ambiguity does not preclude respondents from having learned their correct meaning—or, at least, becoming aware of a substantial likelihood of the terms' correct meaning." *Id.* at 1402.

Here, in the Order granting the Commissioner's Motion to Dismiss, this Court applied the now-defunct objective falsehood standard, holding that Commissioner's argument that her certification that RIDE "shall to the greatest extent practicable" continue to pay its contractors cannot constitute an objective falsehood "because she

4

had an objectively reasonable interpretation of the terms of RIDE's contract with Ocean State that did not require payment" once the schools closed. (ECF No. 26 at 13.) But *Schutte* instructs that the Court must consider what the Commissioner herself knew and believed, not how an objectively reasonable person may have interpreted the relevant obligations. Unlike *Schutte*, which was an appeal of the granting of the defendants' motions for summary judgment, this case is at the motion to dismiss stage. At this early pleading stage, the Court must accept as true the well-pleaded facts. *See Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007). Ocean State has asserted that the Commissioner knowingly and falsely certified that RIDE would comply with the CARES Act requirement knowing that RIDE would not comply. (ECF No. 1 at 14-15.) The plaintiffs therefore appropriately state the scienter element of their FCA claim.

But the Commissioner argues, as this Court previously held, that the "greatest extent practicable" requirement of the CARES Act has no discernable standard and thus she could not have acted knowingly. In *Schutte*, however, the focus was not the ambiguity or lack of definition to the phrase "usual and customary" but on the evidence presented as to what the pharmacies knew about the phrase "usual and customary" before making their allegedly false certifications. 143 S. C.t at 1402. As such, a dearth of clarity to the phrase "to the greatest extent practicable" is not—at the pleadings stage—itself a reason that an FCA action must fail. *See id.* at 1399 ("[F]acial ambiguity alone is not sufficient to preclude a find that respondents knew their claims were false.").

5

Further, although *Schutte* did not directly address the falsity element, it did indicate that falsity is intertwined with the scienter element. Particularly when the scienter claim is based on actual knowledge, rather than deliberate indifference or reckless disregard of the truth, "the scienter requirement of the FCA is plainly directed to the falsity of the claims submitted." *Id.* at 1400 n.4. Here, Ocean State's allegations, which again the Court must accept as true at this early stage, are that the Commissioner knowingly submitted false certifications.

In light of the Supreme Court's holding in *Schutte*, the Court GRANTS Ocean State's Motion to Alter or Amend Under Rule 59(e) (ECF No. 28) amends the Memorandum and Order (ECF No. 26) consistent with this Order and VACATES the judgment (ECF No. 27).

IT IS SO ORDERED.

_____
Mary S. McElroy
United States District Judge

September 22, 2023